1
**WILLKIE FARR & GALLAGHER LLP**
LAURA LEIGH GEIST (SBN 180826)
2
lgeist@willkie.com
333 Bush Street, 34th Floor
3
San Francisco, CA 94104
Tel.: (415) 858-7400
4

5
SAMEER NITANAND ADVANI (*pro hac vice*
forthcoming)
6
sadvani@willkie.com
787 Seventh Avenue
7
New York, NY 10019-6099
Tel.: (212) 728-8587
8

9
Attorneys for Defendants
VICTORY CAPITAL MANAGEMENT, INC.
and NECICF II GP, LLC
10

11
**DUANE MORRIS LLP**
DENIS F. SHANAGHER
12
dfshanagher@duanemorris.com
Spear Tower, One Market Plaza, Ste. 2200
San Francisco, CA 94105
13
Tel.: (415) 957-3318

14
Attorneys for Defendant MARK LERDAL

**VEDDER PRICE (CA), LLP**
ERIC McDonough, Bar No. 193956
emcdonough@vedderprice.com
1925 Century Park East, Suite 1900
Los Angeles, CA 90067
Tel.: (424) 204 7700

PETER WALROD, Bar No. 339521
pwalrod@vedderprice.com
1 Post Street, Suite 2400
San Francisco, CA 94104
Tel.: (415) 749 9500

Attorneys for Defendants
CURT WHITTAKER and RATH, YOUNG,
AND PIGNATELLI, P.C.

15
**UNITED STATES DISTRICT COURT**

16
**NORTHERN DISTRICT OF CALIFORNIA**

17
**SAN FRANCISCO DIVISION**

18
LACUNA SUSTAINABLE INVESTMENTS, LLC;
LACUNA SUSTAINABLE PARTNERS, LLC;
19
LACUNA PROJECT INVESTMENTS, LLC;
LACUNA PROJECT INVESTMENTS II, LLC.
20

21
                    Plaintiffs,

22
        vs.

23
PATRICK FOX; BENNETT COLLIER; VICTORY
CAPITAL MANAGEMENT, INC.; CURT
24
WHITTAKER; RATH, YOUNG, AND
PIGNATELLI, P.C.; NECICF II GP, LLC; MARK
25
LERDAL; and DOES 1-10, inclusive,

26

27
                    Defendants.

28

Case No. 3:24-cv-7705

**DEFENDANTS VICTORY CAPITAL
MANAGEMENT, INC., CURT
WHITTAKER, RATH, YOUNG, AND
PIGNATELLI, P.C., NECICF II GP,
LLC, AND MARK LERDAL'S NOTICE
OF MOTION AND MOTION TO STAY
PROCEEDINGS**

Judge: Hon. Araceli Martínez Olguín
Date: December 19, 2024
Time: 2:00 PM
Courtroom: 10 – 19th Floor

**Redacted, Public Version**

1    **TO THE COURT, ALL PARTIES, AND ALL ATTORNEYS OF RECORD:**

2        Defendants Victory Capital Management, Inc. ("Victory"), Curt Whittaker, Rath, Young, and

3    Pignatelli, P.C., NECICF II GP, LLC, and Mark Lerdal (collectively, the "Moving Defendants") move

4    for an order staying this case until the completion of an arbitration involving overlapping parties and

5    issues currently occurring before JAMS in Massachusetts. This Motion is based on the points and

6    authorities below, the accompanying declaration of Laura Leigh Geist, and the pleadings and papers

7    on file in this action.

8                                            **INTRODUCTION**

9        This litigation arises out of the machinations of a single individual—non-party Brad Bauer—

10   who controls both Plaintiff entities, Lacuna Sustainable Investments, LLC ("LSI") and Lacuna

11   Sustainable Partners, LLC ("LSP") (together, "Plaintiffs"). Plaintiff LSI provided certain

12   administrative and investment services under two general services agreements (the "GSAs") to two

13   entities—Lacuna Project Investments, LLC ("LPI") and Lacuna Project Investments II, LLC ("LPI-

14   II," and together with LPI, the "LPIs")—that were formed to invest in clean energy projects and are

15   identified as putative derivative "plaintiffs" here. Plaintiff LSI held a profits interest in the LPIs (as

16   additional compensation for providing services under the GSAs), while Plaintiff LSP held a minority

17   membership interest in LPI (2%) and LPI-II (1%).

18       LSI (under Bauer's control and direction) repeatedly breached the terms of the GSAs and those

19   breaches resulted in, among other things, the termination of the GSAs by the management committee

20   (the "Management Committee") of each LPI as well as the automatic forfeiture of LSI's profits interest

21   in the LPIs and the right of NECICF II LPI Investor, LLC ("NECLPI") to redeem LSP's interest in

22   the LPIs for a nominal amount. Whether those breaches occurred and whether the contractual

23   consequences that followed are proper are all issues, among others, that are currently being litigated

24   in a JAMS arbitration between the LPIs and LSI (filed before this lawsuit was commenced) that is

25   pending in Massachusetts and is scheduled to go to a final hearing in March 2025.

26       Unfortunately, what is—and should have remained—a straightforward contract dispute

27   between the relevant contracting entities has now mushroomed into 2 parallel proceedings involving

28   a multitude of parties (most of whom have no role in the alleged conduct at issue). Rather than accept

1   the agreed-upon arbitral forum, Bauer instead has chosen to lash out and launch a litigation blitzkrieg

2   predicated on a convoluted conspiracy theory that the Management Committee of each LPI,

3   comprising Defendants Patrick Fox and Bennett Collier, allegedly aided and abetted by others, took

4   steps to intentionally harm LSI and LSP.

5          Plaintiffs' decision to file this action (after the arbitration was commenced) unnecessarily

6   burdens the Court and Moving Defendants and also threatens to interfere with the orderly progress of

7   the arbitration. For this reason, some of the Moving Defendants initially moved to stay the action when

8   it was pending in the San Francisco County Superior Court until the arbitration was completed on the

9   grounds that many of the legal and factual issues raised in Plaintiffs' complaint were already being

10  addressed in the arbitration, including in a counterclaim filed by LSI and LSP against the LPIs, Fox

11  and Collier, that incorporated by reference the entirety of its complaint in this litigation. Thus, it would

12  be a needless waste of time and resources, and risk inconsistent rulings, if the Court and the parties

13  simultaneously litigated the same issues in both proceedings.

14         On October 18, 2024, in a naked act of litigation gamesmanship, LSI and LSP purported to

15  "withdraw" their counterclaims in the arbitration to create the impression that this litigation and the

16  arbitration were completely unrelated and dissimilar, therefore making a stay of the litigation

17  unnecessary. On that same day, Plaintiffs filed the amended complaint in this action, naming for the

18  first time Fox and Collier as defendants (and the LPIs as putative derivative "plaintiffs") and including

19  many of the same allegations that were in its now ostensibly-"withdrawn" arbitration counterclaim.

20  But, as demonstrated below, Plaintiffs' eleventh-hour tactics are unavailing. Even a cursory review of

21  the amended complaint in this action and the LPIs' amended demand in the arbitration shows that,

22  notwithstanding the purported "withdrawal" of Plaintiffs' counterclaims, both proceedings still

23  involve many of the same factual and legal issues and will likely involve significantly overlapping

24  document discovery and witness testimony. For example, one of the key issues in the arbitration will

25  be ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

26  ▮▮▮▮▮▮▮    As noted above, that issue is also at the heart of Plaintiffs' claims in this action against Fox,

27  Collier and the other Defendants.

28

1    Accordingly, in the interests of justice and efficiency, Moving Defendants respectfully request

2    the Court to exercise its discretion and stay this action until the arbitration is completed.

3                                **FACTUAL BACKGROUND**

4    Plaintiff LSI is a company that provided investment and administrative services to two

5    entities—LPI and LPI-II—that were formed to invest in renewable energy projects, specifically solar

6    and energy storage. Geist Decl. ISO Removal Ex. 50 (Amended Complaint), ECF No. 4-9 ("Amended

7    Complaint") ¶¶ 12-13. The LPIs each had three members at formation: NECLPI, LSP and LSI, with

8    LSI's interest being a profits interest. The LPIs are each governed by a limited liability company

9    operating agreement and managed by a two-member Management Committee comprised of Patrick

10   Fox and Bennett Collier. *See id.* ¶¶ 12-13, 17.

11   Each of the LPIs entered into a General Services Agreement (the "GSAs") with Plaintiff LSI,

12   under which LSI would provide clearly defined investment and administrative services in connection

13   with the investments made by the LPIs. *Id.* ¶ 10.

14   On July 9, 2024, LPI-II commenced an arbitration against LSI under its GSA concerning a

15   dispute between the parties regarding the amount of the "Base Fee" payable to LSI for services under

16   the GSA. *Id.* ¶ 131. A week later, Plaintiffs LSI and LSP filed this lawsuit. The then-operative

17   complaint alleged that Defendants Victory and New Energy Capital Partners LLC ("NEC" and

18   together with Victory, the "NEC Defendants"), among others, improperly controlled and directed the

19   actions of NECLPI and of two individuals, Fox and Collier, who serve as the Management Committee

20   for each of LPI and LPI-II. Geist Decl. ISO Removal Ex. 1 (Orig. Compl.), ECF No. 2-1 ¶¶ 19-20, 38.

21   In particular, that complaint alleged that Fox and Collier, "acting at the direction" of the NEC

22   Defendants, "refused" to pay the "Base Fee" that was the subject matter of LPI-II's initial arbitration

23   Demand. *Id*. ¶ 66. The Complaint also alleges that Fox and Collier, again "acting at the direction" of

24   the NEC Defendants, caused LPI-II to file the arbitration "in bad faith." *Id.*

25   Plaintiffs' original complaint in this action did not name as defendants any of NECLPI, Fox,

26   Collier or either of the LPIs. *See generally id.* However, on July 31, 2024, Plaintiffs filed counterclaims

27   in the arbitration (the "Counterclaim"), ███████████████████████████████████████████

28   ████████████████████████████████████████████████████████████████████████████████████

1    ██████████████████ RJN at 1;[1] Geist Decl. ISO MTS ¶ 2 & Ex. 1 (Arbitration Counterclaim).[2] In

2    fact, in their arbitration Counterclaim, ████████████████████████████████████

3    ████████████████████████████████████████████████████████████████

4    ██████████████████████████████ *Id.* ¶¶ 2, 38.

5    　　　In light of these overlapping issues, on September 23, 2024, the NEC Defendants moved in

6    state court to stay this action pending the outcome of the arbitration on the grounds that, among other

7    things, litigating this case while the arbitration was ongoing would waste judicial and party resources

8    and create a risk of inconsistent rulings. Geist Decl. ISO Removal Ex. 38 (State Court Stay Motion),

9    ECF No. 3-17.

10    　　　On September 23, 2024, LPI-II (joined by LPI) amended the demand and notice of claims in

11    the arbitration to ████████████████████████████████████████████

12    ██████████████████ RJN at 1; Geist Decl. ISO MTS ¶ 3 & Ex. 2 (Amended Arbitration Demand).

13    On October 1, 2024, ████████████████████████

14    ████████████████████████████████████████████████████████████████

15    ████████████████████████████ *See* RJN at 2; Geist Decl. ISO MTS ¶ 4 & Ex. 3 (Report

16    of Preliminary Conference and Scheduling Order No. 1). On October 18, 2024, LSI filed a "Response"

17    to the LPIs' Amended Arbitration Demand. *See* RJN at 2; Geist Decl. ISO Motion to Stay ¶ 4 & Ex.

18    4 (Response to Amended Demand) at 1. In that response, LSI ████████████████████

19    ████████████████████████████████████████████████████████████████

20    ████████████████████████████████████████████████████████████████

21    ██████████████████████████████ Also on October 18, Plaintiffs filed their Amended

22    Complaint in this action, which expands the allegations against the various Defendants and adds Fox

23    and Collier as defendants for the first time. *See generally* Amended Complaint. As detailed below, the

24

25

26    _____

[1] References to the "RJN" are to the Request for Judicial Notice filed concurrently herewith.

27    [2] References to the "Geist Decl. ISO MTS" are to the Declaration of Laura Leigh Geist In Support Of Moving Defendants' Motion to Seal Portions of Motion to Stay Proceedings and Supporting Exhibits,

28    filed concurrently herewith.

1  issues set forth in the Amended Complaint ███████████████████████

2  ███████████

3  **ARGUMENT**

4  **I.    Federal Courts Can Stay Litigation In Order To Preserve Resources And Avoid**
   **Inefficient And Wasteful Duplication**

5

6       A federal district court's "power to stay proceedings is incidental to the power inherent in every

7  court to control the disposition of the causes on its docket with economy of time and effort for itself,

8  for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). For this reason, the

9  decision to stay an action lies within the court's "sound discretion." *CMAX, Inc. v. Hall*, 300 F.2d 265,

10  268 (9th Cir. 1962).

11       In exercising that discretion, courts consider: (1) "the potential prejudice to the non-moving

12  party"; (2) "the hardship and inequity to the moving party if the action is not stayed"; and (3) "the

13  judicial resources that will be saved by avoiding duplicative litigation[.]" *Abbott Labs., Inc. v.*

14  *Medtronic, Inc.*, No. 08-cv-4962-DLJ, 2009 WL 799404, at *1 (N.D. Cal. Mar. 24, 2009); *see also*

15  *CMAX*, 300 F.2d at 268. In evaluating the third factor, the Ninth Circuit has directed district courts to

16  examine the "orderly course of justice measured in terms of the simplifying or complicating of issues,

17  proof, and questions of law which could be expected to result from a stay." *CMAX*, 300 F.2d at 268;

18  *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979) ("A trial court may, with

19  propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of

20  an action before it, pending resolution of independent proceedings which bear upon the case.")

21       Such stays are permissible regardless of "whether the separate proceedings are judicial,

22  administrative, or arbitral in character[.]" *Id.* at 863. Nor, for that matter, is it necessary that "the issues

23  in such proceedings are necessarily controlling of the action before the court." *Id.* at 863-64; *see also,*

24  *e.g.*, *Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1465 (9th Cir. 1983) (affirming

25  district court's order staying entire case pending arbitration where only some, but not all, claims were

26  arbitrable); *Vindiola v. State Farm Mut. Auto. Ins. Co.*, No. 17-cv-3701-BLF, 2017 WL 4029708, at

27  *2 (N.D. Cal. Sept. 13, 2017) (granting motion to stay as "undoubtedly more efficient" where

28  resolution of issues in ongoing arbitration would impact federal action); *Luu v. Allstate Ins. Co.*, No.

1  5:11-cv-1523-EJD, 2011 WL 3360040, at *2 (N.D. Cal. Aug. 2, 2011) ("When a request to stay is

2  based on the pendency of arbitration proceedings, the court should grant the stay when the action

3  involves a matter subject to the proceedings, and the action will be impacted as a result of the

4  arbitration."). Further, a stay is appropriate where the separate proceeding is likely to be resolved

5  "within a reasonable time in relation to the urgency of the claims presented to the court." *Leyva*, 593

6  F.3d at 864.

7  **II.    This Court Should Exercise Its Discretion to Stay This Action Pending Resolution of the
         Arbitration.**

8

9  Allowing this case to proceed in parallel with the Massachusetts arbitration would result in

10  exactly the kind of duplicative and wasteful litigation that courts in this Circuit have long recognized

11  should be avoided.

12  As noted above, one of the core issues pending in the arbitration ███████████████

13  ████████████████████████████████████████████████████████████████

14  ████████████████████████████████████████████████████████████████

15  ████████████████████████████████████████████████████████████████

16  ████████████████████████████████████████████████████████████████

17  ████████████████████████████████████████████████████████████████

18  ████████████████████████████████████████████████████████████████

19  ████████████████████████████████████████████████████████████████

20  ████████████████████████████████████████████████████████████████

21  ████████████████████████████████████████████████████████████████

22  ████████████████████████████████████████████████████████████████

23  ████████████████████████████████████████████████████████████████

24  ████████████████████████████████████████████████████████████████

25  ████████████████████████████████████████████████████████████████

26  ████████████████████████████████████████

27       ███████████████████████████████████████████████████████████

28  ████████████████████████████████████████████████████████████████,

1 ██████████████████████████████████████████████████████████████████

2 ██████████████████████████████████████████████████████████████████

3 ██████████████████████████████████████████████████████████████████

4 ████████

5        Those same issues and allegations are woven throughout the Amended Complaint in this

6 action. Specifically, LSI disputes that it has breached the GSAs or committed any wrongdoing or that

7 the termination of the GSAs was proper, including specifically disputing that:

8        • the circumstances surrounding McConnell's departure and Bauer's concealment of the

9          same constitutes a breach of the GSAs (*see generally* Amended Complaint);

10       • LSI failed to schedule meetings or otherwise perform the services required under the GSAs

11         (*id.* ¶¶ 93, 98);

12       • Bauer's negotiations with ██████ over a potential asset sale were unauthorized or in

13         violation of the GSAs (*id.* ¶ 106);

14       • LSI lacked authority to make the investment in █████████ (described in the Amended

15         Complaint as "Investment A") (*id.* ¶ 102).[3]

16        Instead, in the Amended Complaint, LSI claims that the same actions taken by Fox and Collier

17 (in their capacity as Members of the Management Committees) to enforce the rights of the LPIs under

18 the GSAs and related agreements constitute, among other things, a breach of their fiduciary duties,

19 "conversion," "constructive fraud," "racketeering" and intentional and negligent interference with

20 current and/or prospective contractual relations. *Id.* ¶¶ 168-173, 194-200, 201-246. Thus, rulings by

21 the arbitrator on factual and legal issues ████████████████████████████████████████

22 ███████████████████████████████ will have a material impact on whether those same actions

23 could constitute one or more of the torts alleged in the Amended Complaint. *Luu*, 2011 WL 3360040,

24 at *2 (stay should be granted where "the action will be impacted as a result of the arbitration").

25

26 [3] Some of these same factual issues also overlap with respect to ████████████████████

27 ████████████████████████████████████████████████████████████████████

28 ████████ Notwithstanding the termination of the GSAs, Bauer has continued to represent to third
   parties, including ██████ and the LPI's banks, that LSI has such agency authority. (*Id.* at 167.)

1    The arbitrator's rulings on █████████████████████████████████

2    ████████████████████████████████████ will also impact threshold questions, including

3    whether Plaintiffs have standing to bring the purported "derivative" claims asserted for the first time

4    in the Amended Complaint. *See* Amended Complaint ¶¶ 146-61. Under the Delaware Limited Liability

5    Company Act (which governs here), only a member of an LLC has standing to assert such derivative

6    claims. *See* 6 Del. C. § 18-1002 ("In a derivative action, the plaintiff must be a member or an assignee

7    of a limited liability company interest at the time of bringing the action"); *see also CML V, LLC v.*

8    *Bax*, 28 A.3d 1037, 1043 (Del. 2011) (standing for derivative actions limited to members or assignees

9    of the LLC). If the arbitrator concludes that ████████████████████████████

10   ██████████████████████████████████████████████████████████████████

11   ██████████████████████████████████████████████████████████████████

12   ████████████████████████████████████████████ This Court should thus

13   await the arbitrator's ruling on that important gating issue before addressing it in any motions to

14   dismiss filed by the Moving Defendants. *See BrowserCam, Inc. v. Gomez, Inc.*, No. C 08-02959 WHA,

15   2009 WL 210513, at *3 (N.D. Cal. Jan. 27, 2009) (exercising discretion to stay litigation in favor of

16   arbitration where "any damages that may have resulted from those distinct alleged breaches of contract

17   . . . may be affected by the findings of the arbitrator").

18   Additionally, as set forth in the fourth cause of action in the LPIs' Amended Arbitration

19   Demand, ███████████████████████████████████████████████████

20   ██████████████████████████████████████████████████████████████████

21   ████████████████████████████████ Issues relating to the Base Fee are also alleged in the

22   Amended Complaint here given Plaintiffs' allegations that Fox allegedly "unilaterally determined" to

23   lower the amount of the "Base Fee" payable to LSI and did so to "prevent" LSI from exercising its

24   remedies under the LPI-II LLC agreement. Amended Complaint ¶¶ 112-18. So both this Court and the

25   arbitrator will be asked to address issues surrounding ███████████████████████

26   ████████████ The risk of duplicative litigation—and of inconsistent determinations—is obvious;

27   parties could well be subject to conflicting obligations if, for example, this Court concludes that a

28

1  failure to pay the Base Fee was not a breach of any contract or duty, ███████████████

2  ████████████

3        In short, the above sampling of issues and facts demonstrates the true extent of overlap between

4  this litigation and the arbitration and it strongly suggests that "it is efficient for its own docket and the

5  fairest course for the parties to enter a stay of an action before it, pending resolution of independent

6  proceedings which bear upon the case." *Leyva*, 593 F.2d at 863. That way, those overlapping claims

7  and issues need only be litigated once, instead of in two separate fora at the same time.

8  **III.  Plaintiffs Will Not Be Unduly Prejudiced By A Stay Pending Resolution of the Arbitration.**

9

10        Plaintiffs will not suffer any undue prejudice if the stay sought herein is granted. Putting aside

11  that the existence of multiple, overlapping proceedings is the sole result of their own actions, granting

12  the relief sought herein will not deprive Plaintiffs of any rights or remedies they may be entitled to.

13  As noted above, a stay of this action pending resolution of the arbitration will merely ensure that the

14  issues are addressed in an efficient manner that minimizes the burden on the Court and the parties and

15  avoids the risk of inconsistent rulings.

16        Moreover, the arbitrator has entered a scheduling order that sets the final hearing on the merits

17  in ██████████████████████████████ *Supra* at 5. Staying this action,

18  which is still in the very early stages, for a few months to allow the arbitration to complete would not

19  unduly prejudice Plaintiffs. *See Leyva*, 593 F.3d at 864 (stay is appropriate where the separate

20  proceeding is likely to be resolved "in a reasonable time in relation to the urgency of the claims

21  presented to the court."). Indeed, Plaintiffs are not seeking any injunctive or other expedited relief in

22  this action, but rather recovery of damages for past conduct, which is another factor that counsels in

23  favor of a stay. *See Sanchez v. Green Messengers, Inc.*, 666 F. Supp. 3d 1047, 1053 (N.D. Cal. 2023)

24  ("First, the Court finds that Plaintiff would suffer little, if any, damage from a stay. There is no

25  allegation of ongoing violations, and Plaintiff is not seeking injunctive relief.") (citation omitted).

26  **CONCLUSION**

27        For the foregoing reasons, the Moving Defendants respectfully request that this Court stay the

28  present action in its entirety pending completion of the arbitration.

Dated: November 7, 2024

**VEDDER PRICE (CA), LLP**

By:  */s/ Eric McDonough*
    Eric McDonough

Eric McDonough, Bar No. 193956
1925 Century Park East, Suite 1900
Los Angeles, California 90067

Peter Walrod, Bar No. 339521
1 Post Street, Suite 2400
San Francisco, California 94104

Attorneys for Defendants
CURT WHITTAKER and RATH, YOUNG,
AND PIGNATELLI, P.C.

Respectfully submitted,

**WILLKIE FARR & GALLAGHER LLP**

By:  */s/ Laura Leigh Geist*
    Laura Leigh Geist

Laura Leigh Geist (SBN 180826)
333 Bush Street
San Francisco, CA 94104

Sameer Nitanand Advani (*pro hac vice*
forthcoming)
787 Seventh Avenue
New York, NY 10019-6099

Attorneys for Defendants
VICTORY CAPITAL MANAGEMENT, INC.,
and NECICF II GP, LLC

**DUANE MORRIS LLP**

By:  */s/ Denis F. Shanagher*
    Denis F. Shanagher

Denis F. Shanagher
Spear Tower, One Market Plaza, Ste. 2200
San Francisco, CA 94105
Attorneys for Defendant MARK LERDAL

1

**ECF SIGNATURE ATTESTATION**

2        In accordance with Local Rule 5-1, the filer of this document hereby attests that the

3    concurrence of the filing of this document has been obtained from the other signatories hereto.

4

5    Dated: November 7, 2024                    **WILLKIE FARR & GALLAGHER LLP**

6                                               By:    */s/ Laura Leigh Geist*
                                                      Laura Leigh Geist
7
                                               Attorneys for Defendants
8                                              VICTORY CAPITAL MANAGEMENT, INC.,
                                               and NECICF II GP, LLC
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**CERTIFICATE OF SERVICE**

2          I, Laura Leigh Geist, hereby certify that, on November 7, 2024, the foregoing document, as

3   well as the documents attached to it, were served on the following counsel by enclosing the documents

4   in an envelope and placing the envelope for collection and mailing on the date and at the place from

5   the included service list following our ordinary business practices. Individuals working at my direction

6   are readily familiar with this business's practice for collecting and processing correspondence for

7   mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in

8   the ordinary course of business with the United States Postal Service in a sealed envelope with postage

9   fully prepaid:

10  **Counsel for Defendants Curt Whittaker and Rath, Young, and Pignatelli, P.C.**

11  Eric McDonough                              Peter Walrod
    Vedder Price (CA) LLP                       Vedder Price (CA) LLP
12  1925 Century Park East, Suite 1900          1 Post Street, Suite 2400
    Los Angeles, California 90067               San Francisco, California 94014
13

14  **Counsel for Defendant Mark Lerdal**
    Denis Shanagher
15  Duane Morris LLP
    Spear Tower, One Market Plaza, Ste. 2200
16  San Francisco, CA 94105

17  **Counsel for Plaintiffs**

18  Matthew Dart
    Dart Law
19  12625 High Bluff Dr., Ste 106
    San Diego, CA 92130
20

21                                              */s/ Laura Leigh Geist*
                                                Laura Leigh Geist
22

23

24

25

26

27

28