JOSEPH LEVENTHAL (SBN 221043)
jleventhal@glaserweil.com
GLASER WEIL FINK HOWARD
  JORDAN & SHAPIRO LLP
600 W. Broadway, Suite 2850
San Diego, CA 92101
Tele: (619) 765-4380

Attorneys for Plaintiffs and Counter-Defendants,
LACUNA SUSTAINABLE INVESTMENTS, LLC,
LACUNA SUSTAINABLE PARTNERS, LLC, and BRAD BAUER

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| LACUNA SUSTAINABLE INVESTMENTS, LLC; and LACUNA SUSTAINABLE PARTNERS, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> PATRICK FOX; BENNETT COLLIER; VICTORY CAPITAL MANAGEMENT, INC.; CURT WHITTAKER; RATH YOUNG AND PIGNATELLI, PC; NECICF II GP, LLC; MARK LERDAL; GREENBERG TRAURIG, PA; and DOES 1-10, inclusive, <br><br> Defendants, <br><br> -and- <br><br> LACUNA PROJECT INVESTMENTS, LLC; and LACUNA PROJECT INVESTMENTS II, LLC, <br><br> Nominal Defendants. | CASE NO.:  3: 24-cv-7705-AMO <br><br> **NOTICE OF MOTION AND MOTION TO DISQUALIFY ROPES & GRAY LLP AS COUNSEL FOR PATRICK FOX, BENNETT COLLIER, LACUNA PROJECT INVESTMENTS, LLC, AND LACUNA PROJECT INVESTMENTS II, LLC, AND NECICF II LPI INVESTOR, LLC; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> Hearing Date:  March 5, 2026 <br> Hearing Time: 2:00 PM |
| PATRICK FOX; BENNETT COLLIER; LACUNA PROJECT INVESTMENTS, LLC; and LACUNA PROJECT INVESTMENTS II, LLC, <br><br> Counterclaimants, <br><br> v. <br><br> LACUNA SUSTAINABLE INVESTMENTS, LLC; and BRAD ALAN BAUER, <br><br> Counter-Defendants. | |

MOTION TO DISQUALIFY ROPES & GRAY LLP AS COUNSEL          CASE NO. 3:24-CV-7705

**PLEASE TAKE NOTICE** that, on March 5, 2026 at 2:00 PM, Plaintiffs Lacuna Sustainable Investments, LLC ("LSI") and Lacuna Sustainable Partners, LLC ("LSP") (collectively, "Plaintiffs") will appear before the Honorable Araceli Martínez-Olguín in Courtroom 10 on the 19th floor of the San Francisco Courthouse located at 450 Golden Gate Avenue, San Francisco, CA 94102 for a hearing on their Motion to Disqualify Ropes & Gray LLP ("Ropes") as Counsel for Patrick Fox, Bennett Collier, and NECICF II LPI Investor, LLC ("NECLPI").

Plaintiffs' motion is made upon the grounds that (1) Plaintiffs LSI and LSP have standing to bring this motion to disqualify Ropes as counsel and (2) Ropes purports to represent clients with interests adverse to its other clients.

This motion is based upon this notice of motion; the memorandum of points and authorities in support thereof; the declaration of Joseph Leventhal filed concurrently herewith; all other pleadings, papers, and orders on file in this action; and any such other argument or evidence that the Court may deem proper.

DATED:  January 21, 2026

GLASER WEIL FINK HOWARD
JORDAN & SHAPIRO LLP

By:    /s/ *Joseph S. Leventhal*
JOSEPH S. LEVENTHAL
*Attorneys for Plaintiffs and Counter-Defendants*,
LACUNA SUSTAINABLE INVESTMENTS, LLC, LACUNA SUSTAINABLE PARTNERS, LLC, and BRAD BAUER

**MOTION TO DISQUALIFY ROPES & GRAY LLP AS COUNSEL**            **CASE NO. 3:24-7705-AMO**

**TABLE OF CONTENTS**

Page

I.   INTRODUCTION ................................................................................................ 6

II.  FACTUAL AND PROCEDURAL BACKGROUND ......................................... 6

     A.   The Parties .............................................................................................. 6

     B.   This Litigation ......................................................................................... 7

     C.   JAMS Arbitration .................................................................................... 8

     D.   Ropes' Representation of NECLPI ........................................................... 8

III. LEGAL STANDARD ......................................................................................... 9

IV.  ARGUMENT ..................................................................................................... 10

     A.   Plaintiffs have standing to bring this motion to disqualify Ropes as counsel for Patrick Fox, Bennett Collier, the LPIs, and NECLPI. ........................................... 10

          1.   LSI has standing to bring this motion because Ropes is both adverse to, and purports to protect the interests of, LSI. ............................................. 11

          2.   Plaintiffs have standing because Ropes improperly communicated with a represented party and obtained confidential information. ....................... 11

     B.   Ropes represents clients (NECLPI/LSI) with interests adverse to its other clients (Fox/Collier/LPIs) and is subject to automatic disqualification. ............... 13

V.   CONCLUSION ................................................................................................... 17

Glaser
Weil

**MOTION TO DISQUALIFY ROPES & GRAY LLP AS COUNSEL**          **CASE NO. 3:24-7705-AMO**

# TABLE OF AUTHORITIES

Page

## CASES

*Blue Water Sunset, LLC v. Markowitz*,
192 Cal. App. 4th 477 (2011)................................................................................. 13, 14, 15, 16

*Chronometrics, Inc. v. Sysgen, Inc.*,
110 Cal. App. 3d 597 (1980)................................................................................................... 16

*Cnty. of Los Angeles v. Superior Ct.*,
222 Cal. App. 3d 647 (Ct. App. 1990) ........................................................................... 10, 12

*DCH Health Servs. Corp. v. Waite*,
95 Cal. App. 4th 829 (2002)................................................................................................... 10

*Flatt v. Superior Ct.*,
9 Cal. 4th 275 (1994)............................................................................................... 13, 14, 16

*Great Lakes Constr., Inc. v. Burman*,
186 Cal. App. 4th 1347 (2010)............................................................................................... 10

*Hitachi, Ltd. v. Tatung Co.*,
419 F. Supp. 2d 1158 (N.D. Cal. 2006) ................................................................................. 9

*In re A.C.*,
80 Cal. App. 4th 994 (2000)........................................................................................... 10, 17

*In re Cnty. of Los Angeles*,
223 F.3d 990 (9th Cir. 2000)................................................................................................. 9

*Kennedy v. Eldridge*,
201 Cal. App. 4th 1197 (2011)....................................................................................... 10, 11, 17

*Metro-Goldwyn-Mayer, Inc. v. Tracinda Corp.*,
36 Cal. App. 4th 1832 (1995).................................................................................................. 16

*Meza v. H. Muehlstein & Co.*,
176 Cal. App. 4th 969 (2009)................................................................................................. 10

*Ontiveros v. Constable*,
245 Cal. App. 4th 686 (2016)................................................................................................. 9

*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.*,
20 Cal. 4th 1135 (1999)........................................................................................................ 9

*S.E.C. v. King Chuen Tang*,
831 F. Supp. 2d 1130 (N.D. Cal. 2011) ............................................................................... 9

*State Farm Mut. Auto. Ins. Co. v. Fed. Ins. Co.*,
72 Cal. App. 4th 1422 (1999)................................................................................................. 13

4

*Strasbourger Pearson Tulcin Wolff Inc. v. Wiz Technology, Inc.*,
    69 Cal.App.4th 1399 (1999) .................................................................................................. 10

*Trone v. Smith,*
    621 F.2d 994 (9th Cir. 1980) ............................................................................................ 9, 17

*Truck Ins. Exch. v. Fireman's Fund Ins. Co.*,
    6 Cal. App. 4th 1050 (1992) .......................................................................................... 13, 14

## RULES

Cal. Rule Prof. Conduct 1.7(a) ............................................................................................... 13

Cal. Rule Prof. Conduct 1.7(b) ............................................................................................... 13

Cal. Rule Prof. Conduct 4.2(a) ............................................................................................... 12

Cal. Rule Prof. Conduct 4.2(b) ............................................................................................... 12

Glaser Weil

**MOTION TO DISQUALIFY ROPES & GRAY LLP AS COUNSEL**            **CASE NO. 3:24-7705-AMO**

## I.    INTRODUCTION

This case involves a complex web of 10 or more interrelated entities established for the purpose of making investments and generating returns from clean energy and infrastructure assets. Counsel Ropes & Gray LLP ("Ropes") purports to represent at least three of these entities (two of whom are parties here), as well as two individual managers (also parties here), despite obvious conflicts of interest. Ropes also improperly contacted and obtained confidential information from one of Plaintiff Lacuna Sustainable Investments, LLC's ("LSI") founding members, officers, and managers—Patrick McConnell. For these reasons, Plaintiffs LSI and Lacuna Sustainable Partners, LLC ("LSP") (collectively, "Plaintiffs") move to disqualify Ropes from acting as counsel for Defendants/Counterclaimants Patrick Fox and Bennett Collier, as well as Nominal Defendants and Counterclaimants Lacuna Project Investments, LLC and Lacuna Project Investments II, LLC. Plaintiffs also move to disqualify Ropes as counsel for NECICF II LPI Investor, LLC, a Member of Plaintiff LSI, in anticipation of threatened litigation.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Parties[1]

Plaintiffs LSI and LSP, along with NECICF II LPI Investor, LLC ("NECLPI"),[2] established Lacuna Project Investments, LLC ("LPI") and Lacuna Project Investments II, LLC ("LPI II") (collectively, "the LPIs") in March 2020 and October 2021, respectively, for the purpose of making investments and generating returns from clean energy and infrastructure assets. (*See* Leventhal Decl., ¶ 2, Ex. A at 1; FAC ¶ 4, 10–11.) Patrick Fox and Bennett Collier are managers of NECLPI and the LPIs. (Leventhal Decl., ¶ 2, Ex. A at 2.)

David Riester, Brad Bauer, and Patrick McConnell founded Plaintiff LSI and LSP. (*Id.*) LSI

---

[1] The following summary of the parties relevant to this litigation is incorporated from the Second Corrected Final Award in JAMS Arbitration No. 5400000643, which was confirmed by the Trial Court of Massachusetts on October 21, 2025, as well as the operative First Amended Complaint ("FAC"). (Declaration of Joseph Leventhal ["Leventhal Decl."], ¶ 2, Ex. A at 1; *id.*, ¶ 3, Ex. B; *id.*, ¶ 4, Ex. C [FAC].)

[2] NECLPI is funded and managed by New Energy Capital Infrastructure Credit Fund II LP ("NEC Fund II") and/or NECICF II GP, LLC ("NEC Fund II GP"), which are managed by New Energy Capital Partners, LLC ("NEC"). (FAC ¶¶ 17–20.) NEC was acquired by Victory Capital Management, Inc. ("Victory").

**MOTION TO DISQUALIFY ROPES & GRAY LLP AS COUNSEL**                    **CASE NO. 3:24-7705-AMO**

entered into General Services Agreements (collectively, the "GSAs") with the LPIs. (*Id.*) Under the terms of these GSAs, LSI would provide administrative and investment management services to the LPIs in exchange for base fees as well as a profit interests. (*Id.*) Under the GSAs, the Managers are prohibited from providing the delegated "Services" or hiring any other party from providing said "Services" so long as the GSAs are in-place. (*Id.*)

NECLPI funded and owns 98% of LPI and 99% of LPI II. (*Id.* at 11–12.) LSP funded and owns a corresponding 2% and 1% interest in the LPIs. (*Id.* at 12.) Importantly, NECLPI also purports to hold a 20% common membership interest in LSI. (*Id.*)



### B.    This Litigation

On July 16, 2024, Plaintiffs LSI and LSP filed its original Complaint for (1) Intentional Interference with Contractual Relationship; (2) Intentional Interference with Prospective Economic Advantage; (3) Negligent Interference with Prospective Economic Advantage; (4) Aiding and Abetting Breach of Fiduciary Duty; (5) Aiding and Abetting Breach of Fiduciary Duty; (6) Declaratory Relief; and (7) Declaratory Relief against NEC; Victory; Curt Whittaker; Rath, Young, and Pignatelli, P.C.; NEC Fund II GP; Mark Lerdal; and Greenberg Traurig, P.A. in the Superior Court of California, County of San Francisco ("San Francisco Superior Court"). (Leventhal Decl., ¶ 5, Ex. D.)

On October 18, 2024, Plaintiffs LSI and LSP filed the operative First Amended Complaint ("FAC") against Patrick Fox; Bennett Collier; Victory; Curt Whittaker; Rath, Young, and Pignatelli,

MOTION TO DISQUALIFY ROPES & GRAY LLP AS COUNSEL                    CASE NO. 3:24-7705-AMO

P.C.; NEC Fund II GP; and Mark Lerdal asserting 14 causes of action. (FAC at 1–2.) LSI and LSP bring some of these claims derivatively on behalf of the LPIs. (FAC at 2.) On November 6, 2024, Plaintiffs' FAC was removed to this Court. (Leventhal Decl., ¶ 6.)

### C.      JAMS Arbitration

A dispute arose when Fox and Collier took the position that the LPIs did not have to pay LSI the full base fees provided for in the GSAs. Indeed, on July 9, 2024, less than a week before Plaintiffs filed this litigation, the LPIs filed with JAMS their original demand for arbitration against LSI, asserting a single claim for a declaration relating to the amount of the base fee provided for in the GSAs. (Leventhal Decl. ¶ 2, Ex. A at 4.)

After Plaintiff initiated this litigation, the LPIs retaliated and purported to terminate the GSAs on August 8, 2024. (*Id.*) They subsequently amended their arbitration demand to seek "declarations that (1) LPI properly terminated the GSA; (2) it properly terminated LSI's authority to act as its agent; (3) LSI's misconduct automatically terminated LSI's profit interest in NECLPI; and (4) the amount it has paid as the base fee was the amount owed, rather than the larger amount LSI demanded." (*Id.*)

At all times during JAMS Arbitration No. 5400000643, Ropes represented the LPIs. (Leventhal Decl. ¶ 7.) During this arbitration, Ropes lodged with the arbitrator an affidavit from Patrick McConnell, one of Plaintiff LSI's founding and current members. (Leventhal Decl., ¶ 8, Ex. E.) The arbitrator cited and relied on this affidavit in her award against LSI and for the LPIs, which was confirmed by the Trial Court of Massachusetts on October 21, 2025. (Leventhal Decl., ¶ 2, Ex. A at 10, 39–40.)

### D.      Ropes' Representation of NECLPI

On October 20, 2025, Ropes sent Plaintiffs' counsel a confidential settlement communication pursuant to Federal Rule of Evidence 408. (Leventhal Decl., ¶ 9, Ex. F.) In this communication, Ropes purports to represent Defendants/Counterclaimants Fox and Collier, as well as Nominal Defendants/Counterclaimants LPI I and LPI II. (*Id.* at 1.) Ropes also purports to represent NECLPI in derivative claims ***against LSI***, conceding that NECLPI a member of Plaintiff LSI. (*Id.* at 2.)

Indeed, Ropes encloses—and threatens to file—a draft arbitration demand brought by NECLPI. (Leventhal Decl. 10, Ex. G.) This draft demand includes derivative claims brought by

**MOTION TO DISQUALIFY ROPES & GRAY LLP AS COUNSEL**      **CASE NO. 3:24-7705-AMO**

NECLPI **on behalf of** LSI—the very entity that Ropes is adverse to in this action. (*Id.* at 2 ("In its capacity as a Member of LSI, NECLPI hereby notifies you . . . of NECLPI's Demand for Arbitration . . . against you in your capacities as a Manager of LSI . . . and Principals of LSI . . . .").) As recently as January 19, 2026, Ropes continued to maintain that it will be filing this arbitration to purportedly vindicate LSI's rights. (Leventhal Decl. ¶ 11.) It is this representation of LSI—and Ropes' improper communication with LSI's manager and member in the JAMS arbitration—that prompted Plaintiffs to file this motion.

### III.    LEGAL STANDARD

"Federal courts in California look to state law to decide motions to disqualify." *S.E.C. v. King Chuen Tang*, 831 F. Supp. 2d 1130, 1141 (N.D. Cal. 2011) (citations omitted); *see also In re Cnty. of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000) ("Because we apply state law in determining matters of disqualification, we must follow the reasoned view of the state supreme court when it has spoken on the issue."); *Hitachi, Ltd. v. Tatung Co.*, 419 F. Supp. 2d 1158, 1160 (N.D. Cal. 2006) ("Motions to disqualify counsel are decided under state law.").

"'A trial court's authority to disqualify an attorney derives from the power inherent in every court to control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter pertaining thereto.'" *Ontiveros v. Constable*, 245 Cal. App. 4th 686, 694 (2016) (quoting *People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.*, 20 Cal. 4th 1135, 1145 (1999) (internal quotation omitted)). "'Disqualification motions involve a conflict between the clients' right to counsel of their choice and the need to maintain ethical standards of professional responsibility.'" *Id.* at 694–95 (quoting same). "'The paramount concern must be to preserve public trust in the scrupulous administration of justice and the integrity of the bar. The important right to counsel of one's choice must yield to ethical considerations that affect the fundamental principles of our judicial process.'" *Id.* at 695 (quoting same).

"Ultimately, however, the decision to disqualify counsel for conflict of interest is within the trial court's discretion." *Hitachi, Ltd.*, 419 F. Supp. 2d at 1160 (citing *Trone v. Smith,* 621 F.2d 994, 999 (9th Cir. 1980)).

MOTION TO DISQUALIFY ROPES & GRAY LLP AS COUNSEL                    CASE NO. 3:24-7705-AMO

## IV.    ARGUMENT

### A.    Plaintiffs have standing to bring this motion to disqualify Ropes as counsel for Patrick Fox, Bennett Collier, the LPIs, and NECLPI.

"A 'standing' requirement is implicit in disqualification motions." *Great Lakes Constr., Inc. v. Burman*, 186 Cal. App. 4th 1347, 1356 (2010). "Generally, before the disqualification of an attorney is proper, the complaining party must have or must have had an attorney-client relationship with that attorney." *Id.* (citing *Strasbourger Pearson Tulcin Wolff Inc. v. Wiz Technology, Inc.*, 69 Cal.App.4th 1399, 1404 (1999)).

Standing may also arise, however, "from a breach of the duty of confidentiality owed to the complaining party, regardless of whether a lawyer-client relationship existed." *DCH Health Servs. Corp. v. Waite*, 95 Cal. App. 4th 829, 832 (2002); *see e.g.*, *Cnty. of Los Angeles v. Superior Ct.*, 222 Cal. App. 3d 647, 657–58 (Ct. App. 1990) (recusal is required when an attorney improperly received the complaining party's privileged information).

Further, "where the ethical breach is manifest and glaring and so infects the litigation in which disqualification is sought that it impacts the moving party's interest in a just and lawful determination of his or her claims, a nonclient might meet the standing requirements to bring a motion to disqualify based upon a third party conflict of interest or other ethical violation." *Kennedy v. Eldridge*, 201 Cal. App. 4th 1197, 1204 (2011) (internal quotations, citations, and brackets omitted). "It makes no sense for a court to stand idly by and permit conflicted counsel to participate in a case merely because neither a client nor former client has brought a motion." *Id.* at 1204–05. This is because "'[p]rotection of the attorney-client privilege is not the only ground for a motion to disqualify an attorney.'" *Id.* at 1205 (quoting *Meza v. H. Muehlstein & Co.*, 176 Cal. App. 4th 969, 980 (2009)). "[T]he court has an independent interest in ensuring trials are conducted within ethical standards of the profession and that legal proceedings appear fair to all that observe them." *Id.* (quoting *In re A.C.*, 80 Cal. App. 4th 994, 1001 (2000)). Accordingly, "where an attorney's continued representation threatens an opposing litigant with cognizable injury or would undermine the integrity of the judicial process, the trial court may grant a motion for disqualification, regardless of whether a motion is brought by a present or former client of recused counsel." *Id.* at 1205.

MOTION TO DISQUALIFY ROPES & GRAY LLP AS COUNSEL        CASE NO. 3:24-7705-AMO

**1.    LSI has standing to bring this motion because Ropes is both adverse to, and purports to protect the interests of, LSI.**

Here, LSI has standing to bring this motion to disqualify. As set forth above, in a prior JAMS arbitration and the subsequent Massachusetts litigation to confirm the arbitration award, the LPIs (with Ropes as their counsel) asserted claims against LSI alleging, among other things, that they properly terminated the GSAs. Now, in this federal litigation, Defendants/Counterclaimants Patrick Fox and Bennett Collier, as well Nominal Defendants/Counterclaimants the LPIs, filed counterclaims against LSI and one of its members, Brad Bauer. Despite pursuing three separate litigations *against* LSI, Ropes shockingly now purports to represent NECLPI in its plan to file derivative claims *on behalf of* LSI. This is nonsensical, highly improper, and would plainly "undermine the integrity of the judicial process[.]" *Kennedy*, 201 Cal. App. 4th at 1205.

**2.    Plaintiffs have standing because Ropes improperly communicated with a represented party and obtained confidential information.**

To make matters worse, Ropes knowingly obtained confidential information from a represented party through one of LSI's officers and managers—Patrick McConnell. Indeed, during the JAMS arbitration, the LPIs (through Ropes) submitted an Affidavit of C. Patrick McConnell, which was executed on March 11, 2025, well after the filing of this federal litigation and after LSI appeared in the arbitration represented by counsel. (Leventhal Decl., ¶ 8, Ex. E.) In this affidavit, Mr. McConnell disclosed intimate details regarding the founding of LSI and his working relationship with Mr. Bauer. (*Id.* at 1–2.) The only purpose of Ropes obtaining this confidential information from a represented party was to use it directly against that represented party. At the time Mr. McConnell's declaration was submitted—and still today—Mr. McConnell was a member, officer, and manager of LSI and LSP. (FAC ¶ 25.) Despite knowing Plaintiffs were represented by counsel, Ropes communicated with Mr. McConnell, in his role as a member, officer, and manager of LSI and LSP, and used that information against LSI. (Leventhal Decl., ¶ 8, Ex. E.) LSI's counsel was never informed or asked whether Ropes could communicate with Mr. McConnell in his role on behalf of LSI. (Leventhal Decl., ¶ 8.)

Thus it is clear that Ropes improperly contacted and obtained a sworn affidavit from Mr. McConnell despite his status as a founding and current member, officer, and manager of Plaintiffs LSI and LSP.  Apart from supporting disqualification, Ropes' communication is plainly prohibited by the California Rules of Professional Conduct.  *See* Cal. Rule Prof. Conduct 4.2(a)  ("In representing a client, a lawyer shall not communicate directly or indirectly about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer."); Cal. Rule Prof. Conduct 4.2(b) ("In the case of a represented corporation, partnership, association, or other private or governmental organization, this rule prohibits communications with: (1) A current officer, director, partner, or managing agent of the organization; or (2) A current employee, member, agent, or other constituent of the organization, if the subject of the communication is any act or omission of such person in connection with the matter which may be binding upon or imputed to the organization for purposes of civil or criminal liability.").  One cannot assume that the confidential information obtained by Ropes is limited to what is contained in McConnell's affidavit.  In other words, the breadth of the confidential information obtained by Ropes is unknown.  Having obtained limitless confidential information about LSI, Ropes cannot ethically continue to litigate against LSI.  *See Cnty. of Los Angeles*, 222 Cal. App. 3d at 657–58.

To make matters worse, it is clear that Ropes' reliance on communications from Mr. McConnell is ongoing.  (Leventhal Decl., ¶ 10, Ex. G at 10, 13 (referring to McConnell's improperly obtained sworn testimony in the JAMS arbitration).)  Despite Mr. McConnell being one of the current members of LSI, Ropes' threatened litigation of derivative claims on behalf of LSI threatens all members and personnel of LSI ***except, conspicuously, Mr. McConnell.***  (*Id.* at 1–2)[3]  Ropes' arbitration demand then alleges that Bauer has created a culture of intimidation and fear at LSI that has caused LSI's other employees to leave the firm, information that Ropes could have only obtained from McConnell.  (*Id.* at 4, 10, 13.)  Ropes also alleges that Bauer did not receive McConnell's approval to initiate this litigation and that McConnell advised Bauer not to file this litigation, information that (once again) Ropes could have only received from McConnell.  (*Id.* at 11.)

---

[3] In the draft arbitration demand, Ropes concedes that McConnell is a current manager of Plaintiff LSI. (*Id.* at 4.)

**MOTION TO DISQUALIFY ROPES & GRAY LLP AS COUNSEL**　　　　　　**CASE NO. 3:24-7705-AMO**

In sum, Ropes has gotten itself into a tangled ethical morass, purportedly acting on behalf of LSI, which it cannot represent, and working with McConnell, whom it is not permitted to contact. Plaintiffs have standing to bring this motion to end Ropes' improper and unethical conduct.

**B.      Ropes represents clients (NECLPI/LSI) with interests adverse to its other clients (Fox/Collier/LPIs) and is subject to automatic disqualification.**

California Rule of Professional Conduct 1.7(a) provides that "[a] lawyer shall not . . . represent a client if the representation is directly adverse to another client in the same or a separate matter." Relatedly, California Rule of Professional Conduct 1.7(b) provides that "[a] lawyer shall not . . . represent a client if there is a significant risk the lawyer's representation of the client will be materially limited by the lawyer's responsibilities to or relationships with another client, a former client or a third person, or by the lawyer's own interests."

"When confronted with a motion to disqualify an attorney based on representation of clients with conflicting interests, there are two standards." *Blue Water Sunset, LLC v. Markowitz*, 192 Cal. App. 4th 477, 486 (2011) ("*Blue Water*"). "If an attorney represents a current client against a former client, the attorney will be subject to disqualification if there is a substantial relationship between the two representations." *Id.* (citation omitted). "If an attorney simultaneously represents two clients with adverse interests, automatic disqualification is the rule in all but a few instances." *Id.* at 487 (citation omitted).

"[W]here an attorney's representation of one client is adverse to the interests of another current client, the primary value at stake is the attorney's duty of loyalty." *State Farm Mut. Auto. Ins. Co. v. Fed. Ins. Co.*, 72 Cal. App. 4th 1422, 1431 (1999) (citing *Flatt v. Superior Ct.*, 9 Cal. 4th 275, 284 (1994)); *see also Blue Water*, 192 Cal. App. 4th at 487 ("The 'primary value at stake in cases of simultaneous or dual representation is the attorney's duty' of loyalty and 'the client's legitimate expectation' that the duty will be met.") (citation omitted).

"'Representation adverse to a *present* client must be measured not so much against the similarities in litigation, as against the duty of undivided loyalty which an attorney owes to each of his clients.'" *State Farm Mut. Auto. Ins. Co.*, 72 Cal. App. 4th at 1431 (quoting *Truck Ins. Exch. v. Fireman's Fund Ins. Co.*, 6 Cal. App. 4th 1050, 1056 (1992)). "If this duty of undivided loyalty is

violated, public confidence in the legal profession and the judicial process is undermined." *Truck Ins. Exch.*, 6 Cal. App. 4th at 1057 (internal quotation omitted).

"In evaluating conflict claims in dual representation cases, the courts have accordingly imposed a test that is more stringent than that of demonstrating a substantial relationship between the subject matter of successive representations." *Flatt*, 9 Cal. 4th at 284. "Even though the simultaneous representations may have *nothing* in common, and there is *no* risk that confidences to which counsel is a party in the one case have any relation to the other matter, disqualification may nevertheless be *required*." *Id.* (emphasis in original). "Indeed, in all but a few instances, the rule of disqualification in simultaneous representation cases is a *per se* or 'automatic' one." *Id.* (emphasis in original) (collecting cases).

"[T]he reason for the automatic disqualification rule is evident based on the following: 'A client who learns that his or her lawyer is also representing a litigation adversary . . . cannot long be expected to sustain the level of confidence and trust in counsel that is one of the foundations of the professional relationship. . . . [F]ew if any clients would be willing to suffer the prospect of their attorney continuing to represent them under such circumstances.'" *Blue Water*, 192 Cal. App. 4th at 487 (quoting *Flatt*, 9 Cal.4th at 284). "The wisdom of the rule is reinforced by the recognition that we can hardly imagine any scenario in which an attorney can represent two adverse clients and refrain from breaching the duty of loyalty." *Id.*

"So inviolate is the duty of loyalty to an existing client that not even by withdrawing from the relationship can an attorney evade it." *Flatt*, 9 Cal. 4th at 288. "[T]he 'automatic disqualification rule applicable to concurrent representation cannot be avoided by unilaterally converting a present client into a former client prior to hearing on the motion for disqualification.'" *Id.* (quoting *Truck Ins. Exch.*, 6 Cal. App. 4th at 1057).

Here, Ropes filed a JAMS arbitration and Massachusetts litigation against LSI. In this action, Ropes filed counterclaims against LSI. Each of these actions is substantially related to one another, as they all pertain to the relationship between LSI and the LPIs. Despite pursuing two prior litigations and one current litigation *against* LSI, Ropes now purports to represent LSI's interests by threatening to bring derivative claims *on behalf of* LSI. Indeed, Ropes stated: "it is clear that *our client*

**MOTION TO DISQUALIFY ROPES & GRAY LLP AS COUNSEL**          **CASE NO. 3:24-7705-AMO**

[NECLPI], which is the owner of the LPIs and a member of LSI, has legal claims against Mr. Bauer and the LSI principals arising under the LSI LLC Agreement of which they are all members." (Leventhal Decl. ¶ 9, Ex. F at 2.)  Ropes then enclosed a 16-page single-spaced draft arbitration demand detailing those claims.  (Leventhal Decl. ¶ 10, Ex. G.)  During a phone call with counsel on January 19, 2026, Ropes represented that it will be filing the arbitration demand, which purports to vindicate LSI's rights.  (Leventhal Decl. ¶ 11.)  Thus, not only has NECLPI already retained Ropes, they have taken substantial steps towards filing derivative claims on behalf of LSI despite being engaged in litigation against LSI.  They also purport to be able to settle LSI's rights by offering a full release "of all claims that have been or could be asserted by or against any party or its affiliates (*e.g.*, LSI, LSP, Bauer, McConnell, the LSI principals, the LPIs, NECLPI, Victory, Fox, Collier, and their respective lawyers and advisors) . . . ."  (Leventhal Decl. ¶ 9, Ex. F at 3.)  This is plainly improper, and Ropes is subject to automatic disqualification.

The California appellate court's decision in *Blue Water* is particularly instructive.  In *Blue Water*, the entity plaintiff and the individual defendant were each 50% members of three limited liability companies (the "LLCs").  *Id.* at 482.   The entity plaintiff subsequently sued the individual defendant for dissolution of the limited liability companies, breach of contract, breach of fiduciary duty, accounting, declaratory relief, fraud, and fraudulent conveyance.  *Id.*   The entity plaintiff alleged that the individual defendant misappropriated income and conveyed real estate assets of the LLCs elsewhere without consideration.  *Id.*   To the degree that the causes of action asserted were derivative in nature, the LLCs were named as nominal defendants.  *Id.*

An attorney, purporting to represent both the individual defendant and the nominal defendant LLCs, filed a demurrer as to the causes of action for fraud and fraudulent conveyance and appeared at the demurrer hearing.  *Id.* at 483, 487–88.   The demurrer was sustained.  *Id.* at 484.  The entity plaintiff subsequently filed a motion arguing that the attorney "was subject to automatic disqualification because he concurrently represented clients with adverse interests and did not obtain the conflict waivers . . . ."  *Id.*

The appellate court found that the attorney had an actual conflict of interest between his jointly represented clients—the individual defendant and the nominal defendant LLCs.  *Id.* at 488.  The court

**MOTION TO DISQUALIFY ROPES & GRAY LLP AS COUNSEL**                    **CASE NO. 3:24-7705-AMO**

reasoned that the individual defendant had interests adverse to the LLCs because the LLCs stood to benefit if the entity plaintiff were successful on its fraud and fraudulent conveyance claims—the LLCs would receive its stolen property back. *Id.* at 489.  The court commented that, "[t]hough nominally named as defendants, the [LLCs] were actually plaintiffs in the eyes of the law." *Id.*  (citation omitted).  "Consequently, in reality, [the attorney] represented the plaintiffs **and** the defendants at the demurrer hearing on the derivative causes of action." *Id.*  (emphasis added).  Therefore, by asserting demurrers to the entity plaintiff's fraud and fraudulent conveyance claims, the attorney was acting against the best interests of his LLC clients. *Id.*  The attorney's "representation of one side was per se rendered less effective because he was forced to pick one side over the other and could not meet his fiduciary obligations." *Id.*

Here, Ropes filed claims **against** LSI on behalf of its current clients—Fox, Collier, and the LPIs.  Ropes now represents NECLPI and threatens to bring other claims **on behalf of** LSI by naming LSI as a nominal defendant—i.e., a plaintiff in the eyes of the law—and claiming authority to settle those claims that purportedly belong to LSI.  In other words, Ropes is purporting to act in the best interests of LSI while simultaneously pursuing claims in this federal litigation against LSI.  Thus, Ropes has an actual conflict of interest between its current clients.  This is true even though Ropes threatens to bring NECLPI's derivative claims on behalf of LSI in a separate arbitration. *See Metro-Goldwyn-Mayer, Inc. v. Tracinda Corp.*, 36 Cal. App. 4th 1832, 1841 (1995) (a law firm could not represent clients with interests adverse to the plaintiff while simultaneously representing the plaintiff in a "long dormant" matter).  Ropes also cannot avoid dismissal by withdrawing from its representation of LSI (via NECLPI) because "'[s]o inviolate is the duty of loyalty to an existing client that not even by withdrawing from the relationship can an attorney evade it.'" *Id.* (quoting *Flatt*, 9 Cal.4th at 288).

Compounding matters, as set forth above, Ropes improperly contacted and obtained confidential information from Plaintiffs' current member—Patrick McConnell.  This contact alone calls for Ropes' disqualification. *See Chronometrics, Inc. v. Sysgen, Inc.*, 110 Cal. App. 3d 597, 607–08 (1980).

MOTION TO DISQUALIFY ROPES & GRAY LLP AS COUNSEL                CASE NO. 3:24-7705-AMO

## V.     CONCLUSION

The Court has an obligation to ensure "trials are conducted within ethical standards of the profession and that legal proceedings appear fair to all that observe them." *Kennedy*, 201 Cal. App. 4th at 1205 (quoting *In re A.C.*, 80 Cal. App. 4th at 1001).  Accordingly, the Court should disqualify Ropes as counsel in this matter and require Defendants/Counterclaimants Fox, Collier, and the LPIs, as well as prospective litigant NECLPI, to retain new counsel before proceeding with this litigation. *See Hitachi, Ltd.*, 419 F. Supp. 2d at 1160 (citing *Trone*, 621 F.2d at 999).

DATED:  January 21, 2026

GLASER WEIL FINK HOWARD
JORDAN & SHAPIRO LLP


By:   /s/ *Joseph S. Leventhal*
JOSEPH S. LEVENTHAL
*Attorneys for Plaintiffs and Counter-Defendants*, LACUNA SUSTAINABLE INVESTMENTS, LLC, LACUNA SUSTAINABLE PARTNERS, LLC, and BRAD BAUER

MOTION TO DISQUALIFY ROPES & GRAY LLP AS COUNSEL          CASE NO. 3:24-7705-AMO